In the Matter of Walter L. KAISER d/b/a Tri-K Supply Company, Debtor.

HARDNER–DOYLE COMPANY, a Pennsylvania Corporation, Plaintiff,

v.

Walter L. KAISER d/b/a Tri-K Supply Company; Erie County Industrial Development Authority; and Erie Tomorrow, Inc., Defendants.

Bankruptcy No. 82–00318.
Adv. No. 82–0233.

United States Bankruptcy Court,
W. D. Pennsylvania.

Aug. 10, 1982.

Donald C. Buseck, Lawrence C. Bolla, and Quinn, Gent, Buseck & Leemhuis, Inc., Erie, Pa., for plaintiff.

Warren W. Bentz and Bentz & Chestek, and Lawrence A. D'Ambrosio, Erie, Pa., for debtors.

Irving O. Murphy, Thomas B. Brigham, Jr. and MacDonald, Illig, Jones & Britton, Erie, Pa., for Erie Tomorrow, Inc.

Roger W. Richards, Erie, Pa., for Erie County Industrial Development Authority.

Mark L. Glosser and Lampl, Sable & Makoroff, Pittsburgh, Pa., for creditors' committee.

## MEMORANDUM AND ORDER

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge:

The debtor, Walter L. Kaiser, entered into a transaction on September 29, 1976 under which he appears to have become the de facto owner of premises comprising the city block bounded by State, Peach, Third and Fourth Streets in the city of Erie, Pennsylvania on which is erected a concrete and steel commercial building known as the Diamond International Building, 10–12 West 4 Street, Erie, Pennsylvania. The purchase price was $480,000 of which $50,000 was paid down and the balance of $430,000 was payable in installments under a 15-year amortization schedule of $4,171 per month including interest on unpaid balances at 8¼% per annum. The balance as contemplated to be reduced by the payments after five years was computed to amount to $341,979.87 on October 1, 1981 and said balance was provided to become due and payable as a balloon payment on that date. After making all of the payments when and as due until said balloon payment became due October 1, 1981, the debtor has been in default in making said balloon payment as hereinafter explained.

The mechanics of the debtor's purchase of the premises were that the seller, Hardner-Doyle, conveyed them to the Erie County Industrial Development Authority (ECIDA) which executed a restricted mortgage back to Hardner-Doyle for the $430,000 balance of the $480,000 purchase price after crediting the downpayment of $50,000 thereto. Said $430,000 mortgage was payable with interest on unpaid balances at the rate of 8¼% per annum in installments of $4,171 per month with a balloon payment of the then remaining balance of $341,979.87 being payable in a lump sum October 1, 1981. The Authority leased the premises to the debtor at monthly rental payments of $4,171 per month, the same amount as the monthly payments due under the foregoing mortgage until October 1, 1981, when an identical balloon payment of the $341,979.87 then payable under the mortgage, became payable under said lease. The lease contained an option to the debtor to terminate the lease by prepayment of the unpaid balance due under the mortgage at any time, and the further option, upon payment of said mortgage debt, to purchase the property for an additional sum of $10. The length of the lease was "for a term of 59 months and until the note secured by the mortgage is paid in full" (Lease, plaintiff's Exhibit 7, Article II, § 2.1). The lease also provided that the debtor was to pay all taxes, assessments, repairs, insurance premiums and maintenance expenses in connection with the property and to bear all risk of loss— i.e., that he assume all of the obligations of an owner. The lease was assigned by the Authority to Hardner-Doyle Company as collateral for payment of the mortgage and the mortgage note whereby payment of rental and/or mortgage installments were made to Hardner-Doyle direct.

After the failure of the debtor to make the balloon payment of $341,979.87 had continued from October 1, 1981 to February 3, 1982, the parties entered into an extension of lease agreement as of that date under which the debtor paid the lessor $16,684 representing four monthly installments of $4,171 that day and another $4,171 making a total of $20,855 on February 10, 1982, and agreed to pay the defaulted balloon payment due October 1, 1981 of $341,979.87 plus 8¼% per annum interest from October 1, 1981 until date of payment, it being provided in paragraph 3 of the Extension Agreement as follows:

"3. The amount of $20,855.00 set forth in Paragraph 1 above shall constitute consideration for the extension of the due date of the final lease payment and for continued use and possession of the premises. In no way shall said payment be applied to reduce the amount of the final payment due on October 1, 1981 in the amount of $341,979.87 plus interest at 8¼% per annum, the due date for said payment now being extended to March 1, 1982."

Simultaneously with the execution of the extension agreement the debtor executed a quit claim deed for the premises dated February 3, 1982 to Hardner-Doyle Company and delivered it to Donald C. Buseck, Esq., attorney for said Hardner-Doyle Company to hold in escrow with authority to release it to his client if the payments required by the extension agreement were not made.

Identical extension of lease Agreements were entered into for periods of one month each March 10, 1982, April 12, 1982 and May 3, 1982 providing that on payment of the sum of $4,171 on the 10th day of the current month, the debtor would have the right of continued occupancy of the premises during said months of March, April and May respectively. Payments of the sums of $4,171 called for by said extension agreements were made March 10, 1982 and as of April 10, 1982 for the months of March and April, but the $4,171 installment due May 10, 1982 for the month of May was not tendered until June 11, 1982 when it was accompanied by a letter from the debtor's present counsel (he did not appear under the record to have been represented by any counsel in the previous transactions) which set forth that said payment was made on the basis that it would be applied towards bringing the interest and principal provided for in respect to the original obligations to date and reduce the principal balance thereof and said offer of payment was refused.

The premises are agreed to constitute one of the key properties in the redevelopment and upgrading program now taking place in the north central portion of the city of Erie extending southwards from the bayfront with the assistance of grants from federal and state governmental agencies and the erection of a mammoth new corporate headquarters building by the Erie Insurance Exchange and the making of extensive improvements to its existing buildings and the entire community involving an expenditure of $33,000,000. Attorneys for Erie Tomorrow, Inc. which has an option to purchase the Diamond International Building from the debtor for $750,000 which expires December 31, 1982, and for the Erie County Industrial Development Authority which says available grants for other improvements will shortly expire, appeared to urge the Court to make as expeditious a disposition of the matter as possible. In addition, counsel for the creditors' committee intervened to urge the Court that the rights of unsecured creditors would be jeopardized by any ruling that future unpaid payments due the plaintiff from the debtor would constitute rental or first priority administrative expenses payable in the event of liquidation in priority to distributions to said general unsecured creditors.

The debtor is presently collecting some $6,600 a month from sub-tenants in the building which would cover the $4,171 monthly payments due Hardner-Doyle under the terms of the above described lease and mortgage it contends expired October 1, 1981 as extended, and/or as consideration for the various extension agreements and right of continued occupancy and would provide for the payment of taxes, insurance

premiums and other monthly expenses in addition thereto.

The debtor's testimony that the premises have a value of from $850,000 to $900,000 was not contradicted, and as above, Erie Tomorrow, Inc. has an option to purchase them from the debtor for the sum of $750,000 which expires December 31, 1982. The debtor's testimony that he has made exhaustive efforts to obtain financing for the making of the balloon payment from sources in Erie and Pittsburgh was not contradicted, and the court takes judicial notice of the fact that it is difficult if not impossible to market or borrow substantial sums of money against expensive properties due to the depressed economic situation and recession affecting the building industry and the availability of mortgage money except at exorbitant rates of interest.

The elaborate lease and mortgage arrangements and use of ECIDA as an intermediate party were employed to qualify the project as a part of that agency's contributions to the Redevelopment Program of the City of Erie and had the advantage to the parties of permitting the interest payments to be tax free and thus result in a lower rate of interest chargeable to the debtor. It is undisputed that the transaction complied with the requirement of the enabling legislation for ECIDA involvement that the public interest be served by virtue of its being a component part of the improvement program above described and the fact that jobs in alleviation of the unemployment situation in the City of Erie were created thru the contemplated and subsequently realized sub-leasing of many parts of the building for use by enterprises necessitating the creation of said additional jobs. The fact remains that the Authority was a mere nominal party to the transaction and that it assumed no liability or responsibility for its consummation assertable against any assets except the property conveyed to it which constitutes the subject matter of this litigation under the terms of its restricted mortgage thereof to Hardner-Doyle. The essence of the transaction is that it is a deferred conveyance of said premises by the plaintiff to the debtor subject to a purchase money mortgage of said debtor: the debtor is absolutely bound to make all payments called for by the lease it executed including the balloon payment which are expressly provided to be the identical payments provided for in the Authority's mortgage without even repeating their amounts, and the only "option" he acquired was the privilege of having legal title to the premises conveyed to him on payment of the nominal additional sum of $10.00 after making the other payments he is unequivocably bound to make.

The plaintiff refused to accept the $4,171 tendered it June 11, 1982 because under the terms of the tender it would apply toward bringing the interest and principal payments originally provided for to date and reduce the principal balance thereof. The matter is before us on Hardner-Doyle's complaint for relief from automatic stay, or in the alternative, to fix a time within which the debtor must assume or reject its obligation to pay the entire balance of the principal and interest due under the mortgage and/or lease agreement as extended which were wholly executory and unperformed at the time of the filing of the debtor's Petition for Reorganization under Chapter 11 of the Bankruptcy Act May 28, 1982.

Section 365(d)(2) of the revised Bankruptcy Code provides that in cases under Chapter 9, 11, and 13 of said Code an executory contract or unexpired lease of the debtor may be assumed or rejected at any time before confirmation of a plan with the right reserved to the Court on request of a party to such contract or lease to fix a specified earlier date or period of time within which said contract or lease will be assumed or rejected. Plaintiff's contention that the debtor has only sixty (60) days from May 28, 1982, the date of the filing of the Chapter 11 Petition, to assume the contract and defray the balance of the balloon payment with interest on unpaid balances at the rate of 8¼% per annum is contradicted by the foregoing provision that in Chapter 11 Reorganization cases the debtor has until the Plan is confirmed or such earlier date as the

Court may determine. Its further contention that the debtor's rights were terminated before the Chapter 11 filing date of May 28, 1982 when the extended period for the April payment expired April 30, 1982 (the month of May was also paid for by the post-petition tender of $4,171 June 11, 1982 to apply on the principal and interest due under the original contract which had been modified only during the periods to which the prior extension of lease agreements applied) is inapplicable as pre-petition defaults under executory contracts and unexpired leases can be cured under the conditions prescribed by 11 U.S.C. 365(b)(1)(A): the postulations under which defaults can be cured and adequate protection provided for under such legislative mandates would be meaningless if rights under leases and contracts should be considered terminated by pre-petition defaults in such manner as not to be subject to said curative provisions.

It is our view that the value of the property is such that the creditor already has the assurances of adequate protection required by Section 365(b)(1)(A) that the debtor's defaults will be cured as the premises are admittedly worth twice or more the principal balance of the unpaid portion of the balloon payment required to complete his obligations under the lease and mortgage and that he should be given a reasonable time in which to make such payment under said legislation.